EDWARDS v. LYONS et al.

No. 31342. March 28, 1944.

Rehearing Denied June 13, 1944.

*149 P. 2d 495.*

Bruce & Rowan and Moss & Powell, all of Oklahoma City, for plaintiff in error.

W. F. Wilson, Jr., and Hal S. Whitten (of Whitten & Whitten), both of Oklahoma City, for defendants in error.

RILEY, J. This suit was commenced by Effie Lyons Edwards, plaintiff in error herein, and hereinafter referred to as plaintiff, on June 8, 1942, against Mary J. Lyons, as special administratrix, Mary J. Lyons, individually, and Mary J. Lyons, executrix, and Mary J. Lyons et al., as legatees of S. D. Lyons, deceased. The action is one in equity to enforce an alleged contract to make a will. Plaintiff is the daughter of S. D. Lyons, who died on April 9, 1942, possessed of property of considerable value described in plaintiff's petition, consisting of various lots in Oklahoma City. Plaintiff seeks to establish her right to 2/21sts interest in all of said property by and under an alleged contract to make a will.

S. D. Lyons, deceased, was married three times. Sadie Lyons was his second wife and the mother of plaintiff and Ruby Lyons, a son, and Allie Lyons Anthony, a daughter. Sadie Lyons died before 1926. There were other children by the first wife. Mary J. Lyons, who was the third wife, is the widow of S. D. Lyons, deceased. There were no children by the last marriage.

The controversy out of which this action arose had its origin as far back as about 1935. On September 25, 1935, plaintiff herein, joined by her brother, Ruby Lyons, and her sister, Allie Lyons Anthony, commenced an action in the district court of Oklahoma county against S. D. Lyons seeking to establish a trust in certain property standing in the name of S. D. Lyons in which they claimed their mother owned an undivided one-half interest. That case in the district court was No. 88170 and is frequently referred to in the record by that number.

On October 9, 1935, plaintiff herein, Ruby Lyons, and Allie Lyons Anthony commenced another action in the district court against Mary J. Lyons, seeking to establish a trust in certain property standing in the name of Mary J. Lyons in which they claimed their mother, Sadie Lyons, owned an undivided one-half interest. This action was No. 88279 in the district court and is referred to in the record herein under that number.

About the same time the same children of S. D. Lyons commenced another action in the district court of Oklahoma county against S. D. Lyons wherein they sought to establish an interest in

certain personal property as the property of their deceased mother. This case was No. 88330 in the district court.

As a basis for their claims in said actions, plaintiffs contend that their mother, Sadie Lyons, invented a certain formula for the manufacture of a cosmetic preparation for use on colored people's hair; that S. D. Lyons and Sadie Lyons, their father and mother, organized and operated a business under the name and style of S. D. Lyons for the manufacture and sale of said preparation, out of which they made large sums of money and invested it in real estate, taking the title in the name of S. D. Lyons, but which they claimed was actually owned by S. D. Lyons and Sadie Lyons by reason of an alleged partnership arrangement between said S. D. Lyons and Sadie Lyons, their mother, in the conduct of said business.

Case No. 88330 was dismissed in the district court upon the grounds that an action of that nature could be maintained only by the personal representative of Sadie Lyons, deceased. Appeal was taken to this court, resulting in an affirmance of the judgment entered in the district court. Lyons et al. v. Lyons et al., 182 Okla. 113, 76 P. 2d 892. That finally disposed of that case.

In cases No. 88170 and No. 88279, the trial court entered judgment for defendants on the pleadings and opening statement of counsel. Appeal was prosecuted to this court, where the judgments of the trial court were reversed and the causes remanded to the district court for further proceedings. Lyons et al. v. Lyons et al., 182 Okla. 108, 76 P. 2d 887, and Lyons et al. v. Lyons, 182 Okla. 112, 76 P. 2d 893. After said cases were remanded to the district court, it appears that S. D. Lyons and Mary J. Lyons affected a compromise and settlement with Allie Lyons Anthony, and she dropped out of the litigation. Said cases were thereafter prosecuted by plaintiff herein and Ruby Lyons.

While said cases were pending, Bruce & Rowan, attorneys, who had been counsel for Allie Lyons Anthony, filed suit against S. D. Lyons and Mary J. Lyons seeking to recover alleged contingent attorney fees by reason of the settlement of their client's case without their consent. A number of other suits were brought involving title to some or all of the property standing in the name of S. D. Lyons or Mary J. Lyons. Plaintiff herein was not a party to any of said actions except the ones above referred to, No. 88170 and No. 88279. Oil and gas had been produced from some of the lots involved, and oil and gas royalty was being withheld by the producing companies.

In September, 1939, there were some ten or twelve cases pending involving in one way or another the property, in which it was claimed Sadie Lyons in her lifetime had an interest. In the meantime, the principal case, No. 88170, had been tried in the district court before Honorable Sam Hooker, district judge, and had been taken under advisement. About that time negotiations were had between the parties and their counsel looking to a settlement of all of said litigation, including the two cases in which plaintiff herein was interested. Pending such negotiations, Judge Hooker had been requested to withhold a decision in case No. 88170. It was thought that all the parties interested had agreed upon terms of settlement. Thereupon a contract in writing was prepared, having for its purpose the settlement and dismissal of all of said actions. In the meantime, the firm of Moss & Powell, attorneys, had been employed, or in some way had become associated with the firm of Bruce & Rowan, as counsel for Ruby Lyons and Effie Lyons Edwards. The contract covers 20 pages in the record and is too long to set out herein in full. It was prepared as a contract between Ruby Lyons, Effie Lyons Edwards, individually, and Bruce & Rowan and Moss & Powell, each copartnerships in the practice of law, as parties of the first part, and S. D. Lyons and Mary J. Lyons, parties of the second part. It provided that wherever therein the term "individual first parties" appeared, reference was collectively to Ruby Lyons and Effie Lyons

Edwards; and that wherever the term "partnership first parties" appeared, reference was collectively to Bruce & Rowan and Moss & Powell, both copartnerships; and that wherever the term "second parties" appeared, reference was to S. D. Lyons and Mary J. Lyons, collectively.

After reciting at length the actions then pending, the contract recites:

"Whereas, all of the parties to this contract are now desirous of settling now and forever all of the claims of any kind and character whatsoever heretofore asserted, now being asserted, or that may be hereafter asserted, by either of the First Parties to this contract against the Second Parties hereto, or either of them . . . ."

With reference to the two actions in which plaintiff herein and Ruby Lyons were plaintiffs, the contract provided:

"The Individual First Parties have this day executed, and have, contemporaneously with the signing of this contract, filed in the Office of the Court Clerk of the District Court of Oklahoma County, State of Oklahoma, dismissals, with prejudice, of the following causes of action:

"(a) Number 88170, Effie Lyons, now Effie Edwards, et al, vs. S. D. Lyons.

"(b) Number 88279, Effie Lyons, now Effie Edwards, et al, vs. Mary J. Lyons;

and the said Partnership First Parties have duly endorsed on each of said dismissals their consent and approval to the same . . . ."

The contract then provided for contemporaneous dismissal or other disposition of all the other cases favorable to defendant. The contract also provided that the "individual first parties," with their respective spouses, would, contemporaneously with the execution of the contract, join in the execution of quitclaim deeds to all the property involved in cases No. 88170 and No. 88279 to S. D. Lyons and Mary J. Lyons, respectively. The individual first parties further agreed not to assert any right, title, or interest in any of the property then standing in the name of S. D. Lyons or any property thereafter acquired by him during his lifetime. The partnership first parties in effect agreed to release all claims for attorneys' fees against all the property involved during the lifetime of S. D. Lyons and look only to the interest of the individual first parties for compensation, and then only at such time as the individual first parties became entitled to an interest in the estate of said S. D. Lyons as and in the manner provided in the contract. The considerations from second parties were:

"As a consideration for this contract, it is agreed between all of the parties hereto that the Second Parties have paid and agreed to pay, set over, and bequeath to the Individual First Parties certain moneys, property, and interests, as follows:

"(1) To each of the said Individual First Parties the sum of Seven Hundred and Fifty Dollars ($750.00), cash in hand paid, the receipt of which is hereby acknowledged by the said Individual First Parties.

"(2) The said Second Party, S. D. Lyons, has this day, contemporaneously with the execution of this contract, executed his Last Will and Testament, a copy of which is hereto attached, marked Exhibit 'A,' and made a part of this contract, by the terms of which it is provided, among other things, that upon the death of said Second Party, S. D. Lyons, there is bequeathed and devised to each of the Individual First Parties hereto, and it is agreed that they shall have, an equal undivided two-twenty-first (2/21st) interest in and to all of the property, real, personal, and mixed, of which the said S. D. Lyons shall die seized, such interest of each of the said Individual First Parties to be received by them after the payment by the estate of the said S. D. Lyons of all the indebtedness, funeral expenses, taxes, administration costs, and attorneys' fees, and which Last Will and Testament is declared by the parties to this contract to be irrevocable insofar as the said S. D. Lyons shall not hereafter ever make or execute any will by the terms of which he shall bequeath or devise to each of the said Individual First Parties hereto an interest less than an undivided two-twenty-first (2/21st)

interest each in and to all of the property, either real, personal, or mixed, of which he shall die seized. In all other respects the said will of the said S. D. Lyons is by the parties to this contract declared to be subject to change by the said S. D. Lyons in any manner in which he, or his attorneys, shall hereafter deem advisable.

"(3) And it is further agreed by the said Second Party, Mary J. Lyons that, in consideration of her receiving title to the lands and premises described on page nine (9) herein, being the homestead of the Second Parties, in fee in advance, and the further consideration of her receiving under the terms of the will of S. D. Lyons, referred to in paragraph (2) last hereinabove, all of the furniture, furnishings, and fixtures in said home place, that she will not make any claim for widow's allowance, year's support, nor for any of the statutory allowance, for the support of the widow, or fees for any service in the administration of the estate of the said S. D. Lyons, as against said estate, hereby waiving all of such claims to such fees and allowances."

The contract then in effect provided that neither the individual first parties nor the partnership first parties should thereafter in any manner hinder or in any way prevent or seek to prevent second parties from dealing with their property, both real and personal, including buying, selling, trading, encumbering, leasing and renting and receiving oil, gas and other mineral royalties from said land so long as such transactions were not in violation of the spirit of the contract. It was agreed that no copy of the contract should ever be placed of record. The clear purpose and intent of the contract was to release all the property involved in the several actions then pending from any and all claims of any of the first parties during the lifetime of S. D. Lyons, so he could then and thereafter collect and receive the rents, royalties, etc., from the said premises.

Said contract was reduced to writing in triplicate and was signed by S. D. Lyons and Mary J. Lyons and acknowledged by them on September 15, 1939.

It was also signed by plaintiff herein, Effie Lyons Edwards, and acknowledged by her on October 3, 1939.

When presented to Ruby Lyons for his signature, he refused to sign unless cash payment was made to him in the sum of $2,000 instead of $750. The $750 was not paid to plaintiff at the time she signed the contract. After she signed and acknowledged the contract, Effie Lyons Edwards returned the same to her counsel, either Bruce & Rowan or Moss & Powell. One copy was retained by counsel for defendants, and the third copy was delivered to Ruby Lyons for his signature. He did not sign the same and did not return it.

A proposed will of S. D. Lyons was also drawn, conforming to the contract, but it was never executed by him.

On September 29, 1939, Wilson & Wilson, representing S. D. Lyons and Mary J. Lyons, wrote Bruce & Rowan, counsel for plaintiff, to the effect that they felt Bruce & Rowan had had ample time to have the contract executed, and advising them that the proposition of settlement would be withdrawn on October 4, 1939, if the contract was not executed by the first parties by that time. It was not withdrawn, however, and on November 2, 1939, Wilson & Wilson wrote both Bruce & Rowan and Moss & Powell that unless said contract was accepted by November 7, 1939, the proposition would be withdrawn. Again, on November 14, 1939, Wilson & Wilson wrote Mr. Mont R. Powell, of the firm of Moss & Powell, that he would call for the return of the two copies of the contract on November 18th, and that if they were not signed by that time, they would advise Judge Hooker that their clients, S. D. Lyons and Mary J. Lyons, would no longer care to make settlement. Shortly thereafter, W. F. Wilson, Jr., of the firm of Wilson & Wilson, went to the office of Mr. Mont Powell and Mr. Powell there delivered to him the copy of the contract which had been signed by S. D. Lyons and Mary J. Lyons and plaintiff herein, Effie Lyons Edwards. It was not signed by Ruby Lyons or by Bruce

& Rowan or Moss & Powell. The other copy had been delivered to Ruby Lyons to be signed by him. Instead of signing it, he had delivered it to Mr. William H. Lewis, an attorney, some time before November 14, 1939. On November 14, 1939, W. F. Wilson, Jr., wrote Mr. Lewis requesting the return of that copy of the contract. Mr. Lewis did not return it to Mr. Wilson for the reason that, as he explained, it had been delivered to him by Ruby Lyons and he felt that it should not be given to anyone else without the consent of Ruby Lyons.

Thereafter, on December 24, 1939, Judge Hooker announced his decision in case No. 88170, and advised counsel that he had decided the case in favor of defendants and requested counsel to prepare a journal entry, which was done. Plaintiffs in said cause then filed their motion for new trial, which was heard by Judge Hooker some time in April, 1940, and taken under advisement by him. Sometime about July, 1940, while Judge Hooker held his decision on the motion for new trial under advisement, negotiations were again opened by the attorneys looking to a settlement. Finally, about October 1, 1940, an agreement for the settlement of all claims of Bruce & Rowan and Moss & Powell for attorneys' fees in all the cases was entered into, whereby S. D. Lyons agreed to pay Bruce & Rowan $3,500 and Moss & Powell $1,000, for which they agreed to release in full all claims against the property for their attorneys' fees. It appears that in the same agreement S. D. Lyons and Mary J. Lyons agreed to pay, and Ruby Lyons agreed to accept, $2,000, for which he was to execute a quitclaim deed to all the property. Defendants claim that the same agreement included a settlement*with Effie Lyons Edwards for the sum of $300 to be paid to her by S. D. Lyons. This agreement provided that the motion for new trial in case No. 88170 pending before Judge Hooker would be withdrawn, thus leaving his judgment in full force. Thereafter, counsel for S. D. and Mary J. Lyons prepared quitclaim deeds for Effie Lyons Edwards and Ruby Lyons to execute and sent the same to Effie

Lyons Edwards, at Kansas City, Kans., by Ruby Lyons, together with the sum of $100 to be paid to her. When presented to her, she refused to sign upon the ground stated by her that according to her contract she was to receive $750 cash. She returned the deed unsigned. None of the attorneys consulted her further or advised her concerning any change in her original agreement. S .D. Lyons had a conversation with her by long distance telephone. Thereafter the quitclaim deed was sent to her by mail and she executed and acknowledged it on October 7, 1940, and returned it to S. D. Lyons or his attorney. Thereafter, defendant sent her $300 ($100 at one time and $200 at another). About November 13, 1940, Bruce & Rowan were paid $3,000 on the settlement agreement, and on November 30, 1940, they were paid the balance, $500. On November 13, 1940, S. D. Lyons paid Moss & Powell $1,000. When or how much, if anything, Ruby Lyons was paid does not appear.

Thereafter the motion for new trial in case No. 88170 was withdrawn. The quitclaim deed from Effie Lyons Edwards was placed of record and all the other actions involved in the original agreement were disposed of by dismissal or otherwise so as to completely release of record all the property involved in the hands of S. D. Lyons or Mary J. Lyons from any claims of the first parties to said original agreement.

S. D. Lyons died on or about April 9, 1942. It then developed that on or about August 7, 1941, S. D. Lyons and Mary J. Lyons, husband and wife, had executed a joint will, whereby it was provided in effect that upon the death of either, all the property involved should go to the other, after the payment of all debts, funeral expenses, etc., and upon the death of the survivor, the property should go to the children of S. D. Lyons and the son of Mary J. Lyons by a former husband, except that Ruby Lyons and Effie Lyons Edwards, plaintiff herein, were given no real property and no personal property other than $1 each, which was bequeathed to them. It was also specifically provided:

"We do hereby further specifically provide that the said EFFIE LYONS EDWARDS, daughter of S. D. LYONS, and RUBY LYONS, son of S. D. Lyons, shall never at any time receive from the estates of either of us any other bequest than the sum of ONE DOLLAR ($1.00), which is hereinabove specifically enumerated . . . ."

After the death of S. D. Lyons said will was admitted to probate and Mary J. Lyons was appointed executrix. Thereupon, this action was commenced by Effie Lyons Edwards seeking to establish her 2/21sts interest in the property of the said S. D. Lyons and to recover the $450 balance she claimed under the original contract.

Plaintiff's case is based entirely upon the proposition that the original agreement was complete as between herself, S. D. Lyons and Mary J. Lyons, though it was never executed by any of the other parties. Plaintiff contends that she fully complied with said agreement and that S. D. Lyons and Mary J. Lyons received and accepted the benefits thereof from plaintiff, and that the agreement was fully executed on her part, and was therefore binding upon defendants.

The answer admits that plaintiff, Effie Lyons Edwards, and S. D. and Mary J. Lyons signed the compromise agreement relied upon, but denies it ever became a binding contract for the reason that it was never signed by Ruby Lyons and the attorneys; it further alleged that by reason of the failure and refusal of said Ruby Lyons and the attorneys to sign said agreement, S. D. and Mary J. Lyons withdrew the proposed settlement agreement, and that same was never consummated; it further alleged that on or about October 16, 1940, a new agreement was entered into by and between plaintiff, Ruby Lyons, Bruce & Rowan, and Moss & Powell, parties on one side of the controversy, and S. D. Lyons and Mary J. Lyons, as parties on the other side, whereby it was agreed that for and in consideration of the sum of $6,800 to be paid, and which was paid, by S. D.

Lyons, the motion for new trial in case No. 88170 would be, and was, withdrawn, and all the other cases dismissed or settled in favor of defendants, and that the quitclaim deeds were to be executed by plaintiff and Ruby Lyons, and that it was under this new agreement that the quitclaim deeds were executed, and the pending actions were settled and disposed of of record. These allegations of the answer were put in issue by reply, and said issues as thus joined were tried to the court. At the trial it was stipulated that plaintiff made no claim as to the property involved in case No. 88279, that is, five pieces of property standing in the name of Mary J. Lyons.

The principal contention is that the judgment is contrary to the evidence; is not supported by any competent evidence; is against the clear weight of the evidence; and is contrary to law.

The agreement of settlement of the various lawsuits, as drafted, never became a completed contract enforceable as such. It shows upon its face that its purpose was to settle and dispose of all the litigations then pending wherein any of the parties of the first part claimed any right, title, or interest in and to the property involved or the income therefrom, during the lifetime of S. D. Lyons. The execution and full compliance with said contract or agreement by any one of the first parties could not accomplish the plain purpose of said agreement. By its terms and its plain purpose as disclosed on the face thereof, it could not be binding as to any of the parties until it was executed by all. It was withdrawn by defendants before it became effective as a contract.

It does not necessarily follow, however, that the agreement could not be and was not thereafter revived or readopted and acted upon as a contract between plaintiff and S. D. Lyons. However, the burden was upon plaintiff to prove that the agreement was revived and reinstated and treated as a contract between plaintiff and S. D. Lyons. There was no evidence whatever to prove reinstatement or readoption of the

agreement as between plaintiff and Mary J. Lyons. This was apparently admitted when plaintiff stipulated that she made no claim as to the property involved in case No. 88279.

There are facts and circumstances upon which it might be inferred that plaintiff and S. D. Lyons treated the original agreement as in effect between them when plaintiff agreed to execute, and did execute, the quitclaim deed. There is no specific evidence or agreement in writing to that effect. There is evidence in writing showing a separate agreement of settlement between S. D. Lyons and Mary J. Lyons and Bruce & Rowan and Moss & Powell as to the attorneys' fees. That agreement specifically excluded plaintiff's interest and stated that S. D. Lyons and Mary J. Lyons had made separate agreements with her, but did not state the terms.

There is also evidence in writing showing a separate settlement agreement of the claim of Ruby Lyons. Therein Ruby Lyons stated that he had settled his claim, and also stated that "This goes as to myself and Effie Edwards." But there was no evidence whatever that Ruby had any authority for the statement with reference to the interest or claim of plaintiff, Effie Lyons Edwards.

There is the testimony of plaintiff that some time between October 1, and October 7, 1940, S. D. Lyons called plaintiff over long distance telephone and talked with her concerning the execution of a quitclaim deed. As to that conversation, plaintiff testified:

"A. I refused to sign the deed and sent it back to Ruby and told him—I sent him a letter and told him that I would rather deal with papa directly. The following Sunday, papa called me up and asked me why I did not sign the quitclaim deed. I told him that he only sent me $100, when our agreement called for $750. He said 'I don't have all of the money now.' He said 'Everything is tied up, but I will give you $300 now and when I get the oil releases done, I will send you the balance.' I said, 'Papa, I am glad to know that you

are not going to disinherit me.' He said 'Effie, you should get that foolishness out of your mind.' I said, 'From now on, are you going to treat me as a daughter?' He said, 'On this condition.' The next day he sent me the deeds. . . . I signed the deeds that I had agreed to in that contract. That was all I had to do, was sign the deeds. When he sent me the deeds, I signed them. Q. When was the first time you ever heard of any contract relative to the settlement of your rights and Ruby's rights for $6,-800? A. In this courtroom . . . ."

This testimony is too indefinite and uncertain to establish the reinstatement of the agreement between plaintiff and S .D. Lyons. The evidence shows that plaintiff was paid $100 at or about the time she executed the quitclaim deed, and $200 at a later date. She admits receipt of the $300. A letter written by S. D. Lyons to plaintiff, dated November 8, 1940, is relied upon by plaintiff to show that said contract was reinstated. The letter is as follows:

"Nov 8 40

"Effie

"Dear Daughter

"You letter to hand it found all well but me I am a little sick I have not Received Not one cent from the Oil Bruce had every thing tied up so my lawyer can not get it So I can get any money yet he had the Law Suit Recorded in Washington D.C. it takes all I take in to pay my Lawyer I have pd him alredy over fifteen thousand Dollars Soon I Receive some money from the Oil I will pay you they say it may be six moths I have to pay Bruce four thousand & 500.00 thare will not be any money left for me.

"I Remain
"father
"S. D. Lyons."

Plaintiff's counsel in their brief contend that this was after plaintiff had been paid the $300 and was an admission that S. D. Lyons then owed plaintiff a balance of $450 she claimed under the contract. Unfortunately for plaintiff, the record does not disclose when the $300 was paid to plaintiff. It was shown that $100 thereof was paid at or before the time plaintiff executed the quitclaim deed on October 7, 1940. But

the record does not show when the other $200 was paid. W. F. Wilson, Jr., testified positively that he saw the money placed in an envelope and saw it sent to plaintiff—$100 at one time and $200 later. But there is nothing in the record to show when that $200 was paid. The record does show that nothing was paid to the attorneys until November 13, 1940. S. D. Lyons, in his letter of November 8, 1940, supra, stated that up to that time he had not received one cent from the oil. It is no more certain that S. D. Lyons in said letter referred to the $450 claimed by plaintiff than it is that he was referring to the $200 which was possibly paid to plaintiff at a later date.

The record does not show sufficient evidence to prove an agreement on the part of S. D. Lyons to reinstate the original agreement as between himself and the plaintiff.

Plaintiff contends that the court admitted certain incompetent, irrelevant, and immaterial evidence consisting of certain letters written by her after she had signed the quitclaim deed. Conceding, without so deciding, that these letters were inadmissible, the judgment should be sustained. Without considering said evidence, it cannot be said that the judgment is clearly against the weight of the evidence.

Upon the record as a whole, we conclude that the judgment is not clearly against the weight of the evidence and should be, and is, affirmed.

CORN, C.J., and OSBORN, BAYLESS, WELCH, HURST, and DAVISON, JJ., concur. GIBSON, V.C.J., dissents. ARNOLD, J., not participating.